UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE R. JARKESY, JR.,<br>18205 Burkhardt Road<br>Tomball, TX 77377<br><br>and<br><br>PATRIOT28, LLC,<br>18205 Burkhardt Road<br>Tomball, TX 77377<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br>100 F Street, N.E.<br>Washington, D.C. 20549<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. _______________ |

## COMPLAINT

Plaintiffs George R. Jarkesy, Jr. ("Jarkesy") and Patriot28, LLC ("Patriot28") file this complaint against the United States Securities and Exchange Commission (the "SEC") and allege the following:

## I. PRELIMINARY STATEMENT

1. Plaintiffs seek emergency injunctive and declaratory relief to prevent the SEC from proceeding with an administrative proceeding ("AP") set for hearing this Monday, February 3, 2014, that has violated, and will continue to violate, Plaintiffs' fundamental constitutional rights.

2. The SEC charged Plaintiffs with securities law violations and seeks *lifetime* securities-industry and officer-and-director bars and *$100 million* in punitive "civil" money

penalties, but has denied Plaintiffs their fundamental rights of due process, jury trial, equal protection, and has usurped a legislative prerogative, violating the constitutional separation of powers. Among the most egregious of the SEC's violations is its clear prejudgment of the AP, memorialized in a Commission order—*issued and published prior to the hearing on the merits of the case*—containing pages of factual findings against Plaintiffs and a formal legal finding that they are liable for securities fraud.

3.      The fundamental precept of due process—fully applicable to agency adjudications—is a fair hearing before an objective and fair tribunal. By numerous of its actions, the SEC has stripped the AP process of minimum standards of fairness, thereby eliminating all possibility of a fair hearing. Then, by publishing its extensive findings and conclusions against Plaintiffs, finding them guilty—*in advance of the adjudication and without permitting plaintiffs to present any evidence or defenses*—the SEC has removed all doubt about its ability to serve as a fair tribunal. For this reason and many others discussed below, Plaintiffs will suffer irreparable harm if the SEC is not enjoined from commencing the AP hearing next week.

4.      Plaintiffs have made repeated appeals to the Commission to correct the violations it was legally capable of curing or to otherwise remedy the harm it has inflicted upon Plaintiffs. Each time, the Commission has refused to act. In the most recent appeal, Plaintiffs have sought the Commission's recusal due to the prejudgment, and again the Commission denied the requested relief. The hearing is set to commence in New York City in less than a week—in a proceeding which is now void. Plaintiffs have suffered irreparable harm from the violations of their constitutional rights, and will suffer more irreparable harm if the AP is allowed to continue. For this reason, emergency relief is needed.

## II. JURISDICTION, VENUE, AND PARTIES

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, 2201 and 5 U.S.C. § 702 and 706. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

6. Jarkesy is a natural person, citizen of the State of Texas, and resident of Harris County, Texas.

7. Patriot28 is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in Harris County, Texas.

8. The SEC is an agency of the United States government headquartered in Washington, D.C.

## III. STATEMENT OF FACTS

### *A. Background of AP*

9. Jarkesy formed Patriot28 (then known as John Thomas Capital Management, LLC) in 2007 to manage investment funds sold exclusively by a registered placement agent to high-net-worth individuals who knowingly accepted the funds' high-risk investment strategy and acknowledged their ability to bear a loss of their entire investment. Mr. Jarkesy was one of the largest investors, contributing approximately $600,000 of his own money in the funds. The funds invested in small- and mid-cap corporate equities and life settlements (*i.e.*, assignments of high benefit life insurance policies) and made bridge loans to development-stage companies.

10. Patriot28's funds were battered in the financial crisis of 2008 and have not fully recovered. The SEC's Enforcement Division ("Division") investigated Plaintiffs and ultimately sought to institute the AP, charging Plaintiffs with alleged violations of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act" or "'34 Act"),

and the Investment Adviser's Act of 1940 ("Advisers Act" or "'40 Act"). The Division seeks disgorgement of fees, lifetime securities-industry and officer-and-director bars, $100 million in penalties, and a cease-and-desist order.

11. Plaintiffs deny virtually every allegation in the Order Instituting Proceedings ("OIP") issued by the Commission to initiate the pending AP. Numerous of the allegations are objectively false and can be proven so with a single document. Others are immaterial, either because they are grounded on minutiae that could not possibly have impacted investors who were in the midst of a lock-up period, or because they were not causally connected to the losses in the funds' value (which is currently around $15 million). Many reflect a fundamental misunderstanding of the transactions at issue, and others ignore Plaintiffs' reliance on the advice and contributions of qualified professionals who assisted with fund formation and operations.

12. The OIP was issued in March, 2013, and Plaintiffs were served with it in May 2013. The AP "trial" was originally set for October, then moved to November, and is now scheduled for February 3, 2014 in New York (apparently for the convenience of the government, and despite the SEC's settlement with the New York-based co-respondents).

***B. Background of SEC APs***

13. Like many federal regulatory agencies, the SEC is authorized to conduct administrative proceedings pursuant to the strict mandates of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* The SEC has promulgated "Rules of Practice" as its rules of procedure, 17 C.F.R. 201, subpart D. Administrative proceedings are initiated by the OIP issued by the Commission, alleging facts that the Commission has "reason to believe" constitute one or more violations of securities laws enforced by the SEC. The OIP states that the purpose of the hearing is to determine whether or not the Division's allegations are true. From that point forward, the

Commission is cast in the role of unbiased supervisor and reviewer of the proceedings. The agency's Enforcement Division ("Division") serves as trial counsel prosecuting the claim, and the SEC employs several Administrative Law Judges ("ALJ's") to act as judge at the hearings and in pre-hearing conferences.

14.    Nowadays, the SEC imposes tight timetables on AP's pursuant to its Rules of Practice, which allow only up to 300 days from service of the OIP on the respondent to the filing of the ALJ's written "Initial Decision" with the Commission. These self-imposed time limits only allow approximately four to five months for pre-trial preparation after service of the OIP, regardless of the complexity of the issues, the number of respondents and witnesses, and the volume of documents and data collected during the investigation and relevant to the case.

15.    The ultimate judge in the AP is the Commission, which sits as an appellate tribunal but with *de novo* review authority. Only the Commission's final decision on appeal from an ALJ's initial decision becomes an enforceable and appealable judgment.

16.    As the ultimate judge, the Commission, and each of its five members, must scrupulously avoid any bias or appearance of bias during the pendency of the proceedings up until the final decision is made. A biased Commission or a single biased Commissioner—one who has made up his mind regarding a respondent's guilt, or even appears to have done so—is disqualified as a matter of law. When the entire Commission has prejudged a case, it nullifies the AP. Without a valid sitting Commission, there is no decisional body to review the "trial" conducted before the ALJ, no possibility of a valid, binding Commission order, and no final order from which to seek appellate review in circuit court. The whole adjudicatory structure has collapsed.

### *C. The Commission Unlawfully Prejudged Plaintiffs' Guilt in the AP*

17. The SEC charged Plaintiffs in the AP along with co-respondents Anastasios "Tommy" Belesis ("Belesis"), a licensed, securities professional, and John Thomas Financial, Inc. ("JTF"), an SEC-registered broker-dealer owned or controlled by Belesis. JTF served as the placement agent in charge of selling investments in the funds that were formed and managed by Plaintiffs.

18. Shortly before the November hearing (trial) setting, Belesis and JTF reached agreement on the terms of a settlement with Division counsel. The Commission approved that settlement, voting on and issuing an Order Making Findings, Imposing Remedial Sanctions and a Cease-And-Desist Order (the "Order"), which was made public on December 5, 2013. Plaintiffs were given no notice of any hearing or other proceeding regarding the settlement, and were given no opportunity to be heard in connection with the Commission's decision to enter the Order. Further, Plaintiffs provided no admissions or waivers as to any proceedings, nor were any sought.

19. Inexplicably, in the December 5, 2013, Order—a full two months *before* the rescheduled AP hearing—the Commission entered detailed and unqualified findings of fact and conclusions of law *against Plaintiffs*, including finding that Plaintiffs engaged in fraudulent conduct and violated a specific provision of the Advisers Act. The Commission's remarkable Order contains elaborate findings so sweeping as to establish violations of all of the Division's charges and to support each of the remedies sought.

20. The pages of detailed findings issued against Plaintiffs were totally unnecessary to effect the settlement with Belesis and JTF and, therefore, serve no other purpose than to express the opinions and conclusions of the Commission.

21. The Order carries the same legal effect and weight as every other Commission order, and the findings against Plaintiffs cannot be distinguished from the other findings in that Order or any other Commission order.

22. The Order contains no reference to "allegations" or acknowledgement that the Plaintiffs have denied virtually all of the Division's accusations. Instead, the Order was issued as official opinions and conclusions of the agency.

23. Upon entry of its Order finding the Plaintiffs culpable, the Commission also published its findings in the official *SEC News Digest*. See *http://www.sec.gov/news/digest/2013/dig120513.htm* (last visited January 24, 2014.) Like the Order, the *SEC News Digest* omits any reference to "allegations," but rather reports these findings like all other official acts of the Commission. Both the Order and the *News Digest* report have been widely reported in the media.

24. The Commission's action in entering the Order finding Plaintiffs guilty in advance of the trial establishes conclusively that the Commission has prejudged the Plaintiffs' case. Such prejudgment disqualifies the Commission, nullifies the pending AP, and thus requires dismissal.

***D. Charging Plaintiffs in the Forum of an AP Violated Their Rights to Equal Protection Through Denial of Fundamental Right to Jury Trial***

25. The SEC has discretion to bring certain cases in an AP, which previously could only be brought in federal court. The SEC chooses whether to bring cases in APs or in federal court on a case-by-case basis, subject to no standard imposed by Congress or even any SEC rule or established practice.

26.     The Seventh Amendment right to trial by jury in civil cases is a fundamental right, indeed recognized by the Framers of the Constitution as important to the assurance of fair procedure and central to the preservation of democracy.

27.     The result of this haphazard process is that parties charged by the SEC have their fundamental Seventh Amendment right to jury trial preserved, or denied, based on the arbitrary, capricious or malicious decision of the Commission.

28.     When that right to jury trial is arbitrarily denied for some (*i.e.*, Plaintiffs) and respected for others, victims of the deprivation are discriminated against in the availability of their fundamental right to jury trial and the panoply of due process, procedural and evidentiary rules applicable to federal court actions, and are denied equal protection under the law.

29.     When the law lays an unequal hand on those who have allegedly committed intrinsically the same quality of offense and handicaps one and not the other in the exercise of a fundamental right, it has committed an invidious discrimination as if it had selected a particular race, nationality or religion for oppressive treatment. Thus the Commission's discriminatory treatment of Plaintiffs is subject to strict scrutiny analysis, and its unlimited and unguided discretion effectively constitutes invidious discrimination in the availability of the fundamental Seventh Amendment right.

30.     The SEC's actions described above have violated Plaintiffs' rights to equal protection under the law under the Fifth Amendment Due Process Clause applicable to federal agencies.

***E. Charging Plaintiffs in an AP Was Arbitrary and Capricious and Violated Their Rights to Equal Protection***

31. By charging Plaintiffs in an AP instead of federal court, the SEC has treated Plaintiffs differently—to their detriment—from others similarly situated. This different treatment has forced Plaintiffs to defend themselves in the truncated AP proceeding with an extremely high volume of evidence, virtually no discovery, no protection of the Federal Rules of Civil Procedure, no counterclaims, no Federal Rules of Evidence (or any discernible standard governing evidence), no jury, and no Article III judge, when others in the same situation have been afforded all of those protections in federal court.

32. Neither the Securities Act, the Exchange Act or the Advisers Act (or any other statute the SEC enforces) provides any standard to direct the SEC how to choose an AP or a federal court civil action to pursue enforcement actions.

33. The forum determination is made on a case-by-case basis. This *ad hoc* decision dictates whether the respondents will be afforded a jury, rules of procedure, rules of evidence, or an Article III judge.

34. Plaintiffs have identified the following "comparators," who were charged in a similar timeframe as Plaintiffs, and whose cases—like Plaintiffs'—could have been brought in federal court or in an AP. Each of the comparators is alleged to have engaged in investment advisor misconduct with identical or nearly-identical charges and remedies sought: (1) BKV, S.D.-Fla; (2) SK, N.D.-Ga.; (3) RKH, S.D.-N.Y.; (4) WN, N.D.-Cal.; (5) NSC, LLC, D.-Conn.; (6) DUT, N.D.-Tex.; (7) YA, S.D.-N.Y.; (8) DHFG, D.-Conn.; and (9) JG, S.D.- Fla. (The details of the cases against the comparators are compiled and attached on Exhibit A, which is incorporated herein by reference.)

35. The SEC lacks any rational basis to charge Plaintiffs in an AP, yet brings suit in federal court against the comparators. Plaintiffs further allege, on information and belief, that there is no reasonably conceivable state of facts that could provide a rational basis for the SEC's decision to bring Plaintiffs' case as an AP or treat Plaintiffs disparately from other, virtually identical parties.

36. Plaintiffs allege, on information and belief, that the SEC acted intentionally and without mistake.

37. Plaintiffs allege, on information and belief, that the SEC's decision to charge Plaintiffs in the AP forum was malicious and motivated, at least in part, by animus against Plaintiffs.

38. The SEC's actions described above have violated Plaintiffs' rights to equal protection under the law under the Fifth Amendment Due Process Clause applicable to federal agencies.

***F. The Commission Engaged in Unlawful Ex Parte Communications in Violation of the Administrative Procedure Act***

39. Under the Commission's current practice and published procedures, the memorandum to recommend a settlement to the Commission, along with the settling party's written offer of settlement, are routinely prepared by persons involved in the investigation and/or prosecution of the case.

40. In addition, upon information and belief, the participating Division staff responds to questions and issues raised by Commissioners and their staff while reviewing the recommendation, and may participate in closed Commission meetings during which the settlement is considered and voted upon.

41.     The APA and the OIP in Plaintiffs' case both impose rigid restrictions or outright bans on *ex parte* communications between the Division staff prosecuting APs and the Commission. Section 554(d) of the APA provides that

> An employee or agent engaged in the performance of investigative or prosecutorial functions for an agency in a case may not, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 557 of this title, except as witness or counsel in public proceedings.

The OIP entered against Plaintiffs further provides that

> In the absence of an appropriate waiver, no officer or employee of the Commission engaged in the performance of investigative or prosecuting functions in this or any factually related proceeding will be permitted to participate or advise in the decision of this matter, except as witness or counsel in proceedings held pursuant to notice.

42.     Despite the clear prohibitions of the APA and OIP, the Commission could not have possibly possessed the particularized information reflected in the Order unless it received significant, detailed *ex parte* communications from the Division staff who investigated and were prosecuting the case, in direct violation of Section 554(d) of the Administrative Procedures Act.

43.     Because the Commission engaged in unlawful *ex parte* communications with its Division staff in violation of the APA and the terms of the OIP, the AP is nullified and must be dismissed by the Commission.

44.     Plaintiffs sought dismissal of the AP by motion to the ALJ with extensive citation to controlling authority related to improper *ex parte* communications.   The ALJ deemed Plaintiffs' request "frivolous" and "baseless" and directed Plaintiffs to file no further motions "like this" in the AP. The ALJ reached her prompt and unreasoned decision despite the clear violation of the APA, citing and relying instead on a twenty-three-year-old *Commission* decision in which the Commission granted itself authority to engage in *ex parte* communications, in clear

violation of the APA, by creating an extra-statutory rule of convenience as a subterfuge to excuse regularly-committed statutory violations.

45. Plaintiffs have appealed the ALJ's erroneous decision to the Commission, but the Commission has thus far refused to grant relief.

46. By these actions, the Commission has engaged in unlawful and improper *ex parte* communication with the Division staff in this case, in violation of the Administrative Procedure Act and the OIP, which actions violate Plaintiffs' due process rights. These violations can only be cured by dismissal.

***G. The SEC Denied Plaintiffs' Due Process By its Refusal to Follow its Own Procedures***

47. A government agency that adopts procedural rules must follow those rules. The SEC's rules of procedure—the "Rules of Practice"— govern SEC AP's, including the AP filed against Plaintiffs. Those Rules expressly adopt and incorporate the doctrine of *Brady v. Maryland* and require the Division to produce to AP respondents the exculpatory or impeachment materials and documents the Division possessed or gathered in its investigation. 17 C.F.R. § 201.230(a), (b).

48. In the AP, the Division delivered to Plaintiffs a hard drive containing over 700 gigabytes ("gb") of data the Division presumably obtained in its investigation. The Division did not identify any *Brady* material contained within the 700 gb of data, nor did it provide an index or other catalogue to identify material on the drive. Despite diligent efforts, Plaintiffs could not possibly review the enormous quantity of data provided before a hearing on the merits in 2014.

49. As told to the SEC, Plaintiffs were advised by a computer forensics expert that 700 gb of data are roughly equivalent to 7,000 linear yards of books on shelves, or between 15

and 25 million pages of information, which would take two lawyers or paralegals working twelve-hour days over four decades to review. Plaintiffs, therefore, cannot possibly determine what *Brady* or other relevant material is hidden in the 700 gb mountain of data over the next several years, much less within 300 days.

50. The ALJ and the Commission refused to order the Division to provide any guidance as to what *Brady* material is in the data. (It is clear, however, that the Division included in the 700 gb a great deal of irrelevant, trash e-mail collected from other witnesses that Plaintiffs will have to sort through, such as Viagra® advertisements and solicitations for the sale of pornography.)

51. Plaintiffs learned, shortly before the then-scheduled AP hearing, that Division counsel were in possession of previously-undisclosed interview notes from their interviews with investor witnesses, some of whom are named on the Division's witness list for the AP hearing. Division counsel refused to produce the notes, claiming privilege. Shortly thereafter, the Division produced a sworn declaration of its trial counsel purportedly disclosing and summarizing all *Brady* material in the witness interview notes.

52. The Division then produced the notes of one of several witness interviews, which notes were four (4) pages in length and chock full of material—not disclosed in the declaration—to impeach the witness and the settled co-respondent, both of whom the Division intends to call at the AP hearing.

53. In the trial attorney's declaration and summary, only six (6) lines from the notes were revealed, establishing that the Division's claim of *Brady* compliance was untrue and the Division counsel's written declaration was deficient, incorrect, and misleading.

54.     Plaintiffs moved that the ALJ compel production of the actual interview notes, a motion the ALJ later denied.   The ALJ nevertheless summarily denied all relief Plaintiffs requested (*i.e.*, *in camera* review of the withheld notes, identification of *Brady* material in the 700 gb of data, and a continuance).

55.     On interlocutory appeal, the Commission likewise denied all relief sought by Plaintiffs in an opinion replete with mischaracterizations of fact and law.

56.     Because the SEC adopted *Brady* as a procedural rule, it is obligated to follow that case and its progeny, as a necessary component of even the abbreviated due process mandates applicable to agency proceedings pursuant to the Fifth Amendment.   As the Commission itself recognized in an order issued one month earlier, a *Brady* doctrine encompasses the *Pennsylvania v. Ritchie* duty to review, *in camera*, documents the government claims are privileged but may contain *Brady* material.   The SEC's *Brady/Ritchie* obligation was specifically brought to the ALJ's attention, but the ALJ refused to review the notes *in camera* or make them part of the AP record, a glaring violation of the SEC Rules of Practice, which was then ratified by the full Commission in its denial of interlocutory relief.

57.     Because the ALJ and the Commission refused to follow *Brady* and *Ritchie*, Plaintiffs not only will be forced to an AP hearing on the merits without the *Brady* material that is almost certainly in the undisclosed Division counsel's notes, but also will have no meaningful judicial review of the hearing decision because the *Brady* notes will not be in the record, and Plaintiffs will be unable to demonstrate the materiality of the missing exculpatory evidence.

58.     The ALJ's and Commission's denials of relief have made it impossible for Plaintiff's to obtain a fair hearing.

59. In addition, the SEC's violations of its own regulation—one protecting fundamental statutory or constitutional rights of parties appearing before it—requires invalidation of the proceedings without regard to whether the alleged violation has substantially prejudiced the Plaintiffs.

***H. Irreparable Injury***

60. Plaintiffs have been irreparably harmed by the SEC's constitutional and other violations described herein.

61. Plaintiffs will suffer further irreparably injury, if the AP is not halted.

62. If an injunction does not issue to halt the AP hearing, Plaintiffs will be irreparably injured because they will have suffered and continue to suffer the very constitutional violation of which they complain.

***I. Exhaustion of Remedies and Administrative Procedure Act Jurisdiction***

63. Neither the Administrative Procedure Act nor the SEC's Rules of Practice provide any opportunity for Plaintiffs to assert counterclaims, obtain discovery on these issues or request declaratory relief. In addition, a hearing or an appeal to the Commission, a tribunal that has nullified the administrative proceedings through a pre-hearing prejudgment of the Plaintiffs, is so violative of due process as to be *per se* irreparable injury warranting injunctive relief. Plaintiffs have exhausted all administrative remedies available to them before the SEC, as alleged above, and have no adequate remedy at law.

64. It is appropriate and necessary for this Court to exercise jurisdiction over Plaintiffs' claims before conclusion of the AP because i) without judicial review at this stage all meaningful judicial review will be foreclosed, ii) Plaintiffs' claims are wholly collateral to the review provisions of the Securities Act, Exchange Act and Advisers Act, and iii) Plaintiffs'

claims are outside the experience of the SEC. First, the AP and the avenue for review do not provide for litigation of the issues raised by Plaintiffs, and the SEC is not empowered by statute to grant relief. Plaintiffs cannot assert counterclaims, seek declaratory relief, or conduct discovery on any of their constitutional claims in the AP. Nor do the claims charged by the SEC have anything to do with the constitutional challenges raised by Plaintiffs. As a result, no administrative findings or record will be developed in the AP that will permit appellate review of Plaintiffs claims pursuant to the normal procedures available under the Administrative Procedure Act. Second, Plaintiffs' claims of constitutional deprivations are wholly collateral to the securities law violations the SEC charges in the OIP; even if Plaintiffs were guilty as charged (which they are not) they would still have actionable claims against the SEC for violating their rights. In other words, the claims herein are independent of the merits of the charged violations of securities laws. Moreover, Plaintiffs do not complain of mere errors in the application of the SEC's adjudicatory procedures, but contest *the very existence* of the Commission—as a legally-valid and surviving component of the administrative process as applied to Plaintiffs—in the wake of its fatal prejudgment of the case. Third, whether the SEC has violated Plaintiffs' rights as alleged is not a matter peculiarly within the SEC's administrative securities law expertise, and administrative expertise is not implicated where a constitutional violation is alleged, because such allegations are particularly suited to the expertise of the judiciary. Moreover, the SEC is in no position to adjudicate allegations of its own violations of constitutional rights. Finally, because the SEC has conclusively shown that it is biased against Plaintiffs and has prejudged the AP, any administrative proceeding before, or appeal to, the SEC would be an exercise in futility that the law does not require before judicial review. In short, the Commission's conduct has vitiated its pivotal role in the process, legally eradicating the entire adjudicatory framework and

leaving Plaintiffs with no administrative remedy to exhaust. Thus the very notion of exhaustion has been rendered a legal impossibility.

65. The Commissioners, ALJ and SEC employees acted in their official capacities in taking the actions described herein.

**COUNT ONE**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**

66. Plaintiffs repeat and re-allege the foregoing paragraphs 1 – 65 as if set forth in full.

67. Plaintiffs' rights to due process, equal protection in the adjudication of the allegations in the OIP will be irreparably denied if a temporary restraining order does not issue to stay the AP. Plaintiffs have a substantial likelihood of success on the merits of their claims under settled law. Plaintiffs will be irreparably injured without injunctive relief, as described above, and the harm to Plaintiffs if the TRO is not granted far outweighs any harm to the government if it is denied; indeed, the SEC can show no harm resulting from enjoining the current and void proceedings. The 300-day-deadline is an internal SEC limitation. For decades, the SEC's APs proceeded without such a deadline and continued sometimes for years, as case circumstances dictated. The grant of an injunction will not disserve the public interest, as it is in the public interest that the constitutional rights of all parties charged by the SEC be protected and that the appearance of fairness be preserved.

68. Pursuant to the Court's Local Rules, Plaintiffs contemporaneously apply for a temporary restraining order and preliminary injunction by separate pleadings supported by sworn proof of the facts supporting such application.

69. Plaintiffs provided the SEC with a copy of the complaint, motion for TRO and memorandum of points and authorities prior to filing.

**COUNT TWO**
**DECLARATORY JUDGMENT**

70. Plaintiffs repeat and re-allege the foregoing paragraphs 1 – 65 as if set forth in full.

71. This is a case of actual controversy within this Court's jurisdiction and the Court, upon the filing of this Complaint, may declare the rights and other legal relations of any interested party seeking such declaration, pursuant to 28 U.S.C. § 2201.

72. Plaintiffs request a declaratory judgment that i) the SEC nullified the AP proceedings by prejudging the allegations as to Plaintiffs in the OIP, ii) the SEC's decision to initiate administrative proceedings against Plaintiffs violated their right to equal protection under the law, iii) the SEC violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, by the Commission engaging in unlawful *ex parte* communications with the Division staff, and iv) the SEC violated Plaintiffs' right to due process by refusing to follow the SEC's own procedural rules, by withholding *Brady* evidence, and by providing insufficient time for Plaintiffs' to adequately prepare their defense.

**PRAYER FOR RELIEF**

Plaintiffs, separately and together, seek a temporary restraining order, preliminary injunction and permanent injunction enjoining the Commissioners, together with their officers, agents, servants, employees and attorneys, from prosecuting and pursuing the administrative proceeding, referred to as AP File No. 3-15255, against Plaintiffs or any other action against Plaintiffs until such time as this case is fully and finally resolved.

Plaintiffs, separately and together, seek a declaratory judgment that the SEC has prejudged the claims against Plaintiffs.

Plaintiffs, separately and together, seek a declaratory judgment that the SEC's prejudgment of Plaintiffs nullified the AP.

Plaintiffs, separately and together, seek a declaratory judgment that the SEC has violated Plaintiffs' right to equal protection.

Plaintiffs, separately and together, seek a declaratory judgment that the SEC has violated Plaintiffs' right to due process.

Plaintiffs, separately and together, seek a declaratory judgment that the SEC has violated the Administrative Procedure Act and the Commission's OIP.

Wherefore, Plaintiffs respectfully request that the Court grant this relief and such other relief to which Plaintiffs are entitled.

Respectfully Submitted,

HUNTON & WILLIAMS, LLP

By: ______________________
Mark B. Bierbower
District Of Columbia Bar No. 320861
2200 Pennsylvania Avenue NW
Washington, DC 20037
202.955.1665 (telephone)
202.778.2201 (fax)

**Karen Cook, Esq.***
KAREN COOK, PLLC
E-mail: karen@karencooklaw.com

Phone: 214.593.6429
1717 McKinney Avenue, Suite 700
Dallas, Texas 75202
Fax: 214.593.6410

**Stephen Gleboff, Esq.***
GLEBOFF LAW GROUP, PLLC
E-mail: sgleboff@gleboff-law.com
Phone: 214.593.6458
1717 McKinney Avenue, Suite 700
Dallas, Texas 75202
Fax: 214.593.6410

**S. Michael McColloch, Esq.***
S. MICHAEL MCCOLLOCH, PLLC
E-mail: smm@mccolloch-law.com
1717 McKinney Avenue, Suite 700
Dallas, Texas 75202
Phone: 214.593.6415
Fax: 214.593.6410

**ATTORNEYS FOR PLAINTIFFS
GEORGE JARKESY, JR.
AND JOHN THOMAS CAPITAL MANAGEMENT
GROUP D/B/A PATRIOT28 LLC**

* Motion to appear *pro hac vice* to be filed.

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 29, 2014, the foregoing Complaint was served on the parties below and in the manner indicated.

By: [signature]
Mark B. Bierbower, Esq.

Richard M. Humes
Associate General Counsel
U.S. Securities and Exchange Commission
100 F. Street, N.E.
Washington, DC 20549
*VIA E-MAIL: humesr@sec.gov*
*VIA COURIER*

Sam Forstein
Assistant General Counsel
U.S. Securities and Exchange Commission
100 F. Street, N.E.
Washington, DC 20549
*VIA E-MAIL: forsteins@sec.gov*
*VIA COURIER*

# Exhibit A

SIMILARLY SITUATED DEFENDANTS
CHARGED BY SEC

| Lead Defendant | SEC Link | File Date | Violations Alleged | Forum |
|---|---|---|---|---|
| Velten, Brian K.<br>Civ. Act. No. 1:13-cv-23477 | 1 | 09-27-13 | **§ 17(a) '33**<br>**§ 10(b) '34**<br>**§ 206(1), (2) '40** | S.D. Fla |
| Kirkland, Stephen<br>Civ. Act. No. 1:13-cv-3150 | 2 | 09-23-13 | **§ 10(b) '34**<br>**§ 206(1), (2) '40** | N.D. Ga. |
| Hansen, Randal Kent<br>Civ. Act. No. 13-cv-01403 | 3 | 03-01-13 | **§ 17(a) '33**<br>**§ 10(b),** 15(a) **'34**<br>**§ 206(1), (2), (4) '40** | S.D.N.Y. |
| Ng, Walter<br>Civ. Act. No. C-13 0895 | 4 | 02-28-13 | **§ 17(a) '33**<br>**§ 10(b) '34**<br>**§ 206(1), (2) '40** | N.D. Cal. |
| New Stream Capital, LLC<br>Civ. Act. No. 3:13-cv-264 | 5 | 02-26-13 | **§ 17(a) '33**<br>**§ 10(b) '34**<br>**§ 206(1), (2), (4) '40** | D. Conn. |
| Thomas, Delsa U.<br>Civ. Act. No. 3:13-cv-00739 | 6 | 02-15-13 | **§ 17(a) '33**<br>**§ 10(b) '34**<br>§ 203A, **206(1), (2), (4) '40** | N.D. Tex. |
| Yorkville Advisors<br>Civ. Act. No. 12-cv-7728 | 7 | 10-17-12 | **§ 17(a) '33**<br>**§ 10(b) '34**<br>**§ 206(1), (2), (4) '40** | S.D.N.Y. |
| Deer Hill Financial Group<br>Civ. Act. No. 12-01317 | 8 | 09-13-12 | **§ 17(a) '33**<br>**§ 10(b),** 15(a) **'34**<br>**§ 206(1), (2) '40** | D. Conn. |
| Gomez, Jorge<br>Civ. Act. No. 1:12-cv-21962 | 9 | 05-29-12 | **§ 10(b),** 15(a) **'34**<br>**§ 206(1), (2) '40** | S.D. Fla. |

Legend:
Bold statutory sections in Violations Alleged column are identical to charges against Plaintiffs.
'33: Securities Act of 1933
'34: Securities Exchange Act of 1934
'40: Investment Advisers Act of 1940

1.      (Velton)
        www.sec.gov/litigation/litreleases/2013/lr22821.htm

2.      (Kirkland)
        www.sec.gov/litigation/litreleases/2013/lr22808.htm

3.      (Hansen)
        www.sec.gov/litigation/litreleases/2013/lr22631.htm

4.      (Ng)
        www.sec.gov/litigation/litreleases/2013/lr22628.htm

5.      (New Stream Capital)
        www.sec.gov/litigation/litreleases/2013/lr22625.htm

6.      (Thomas)
        www.sec.gov/litigation/litreleases/2013/lr22618.htm

7.      (Yorkville)
        www.sec.gov/litigation/litreleases/2012/lr22510.htm

8.      (Deer Hill Financial Group)
        www.sec.gov/litigation/litreleases/2012/lr22479.htm

9.      (Gomez)
        www.sec.gov/litigation/litreleases/2012/lr22376.htm