# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE R. JARKESY, JR., *et al.* | |
| Plaintiffs, | Civil Action No. 14-114 (BAH) |
| v. | Judge Beryl A. Howell |
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | |
| Defendant. | |

## MEMORANDUM OPINION

This matter arises out of an administrative proceeding initiated by the Enforcement Division of the defendant, the U.S. Securities and Exchange Commission ("SEC"), against the plaintiffs, George Jarkesy and his investment fund management group, Patriot28 (formerly known as John Thomas Capital Management, LLC) (collectively, "the plaintiffs"). The gravamen of the plaintiffs' complaint is that they cannot obtain a fair hearing before the SEC in an ongoing administrative process because the SEC's settlement with two of the plaintiffs' co-respondents included myriad findings "against Plaintiffs and a formal legal finding that they are liable for securities fraud." Compl. ¶ 2, ECF No. 1. Pending before the Court are the plaintiffs' Motions for Preliminary and Permanent Injunctions and Motion to Expedite ("Pls.' TRO Mot."), ECF No. 3, and their Motion for Leave to Amend Complaint by Filing First Amended Complaint ("Pls.' Mot. Am."), ECF No. 16. Since no District Court has subject matter jurisdiction over this matter due to the extensive statutory scheme in the securities laws that govern this action, the plaintiffs' motions are denied and this matter is dismissed.

I.   **BACKGROUND**

Plaintiff Jarkesy formed Plaintiff Patriot28 in 2007 "to manage investment funds sold exclusively by a registered placement agent to high-net-worth individuals who knowingly accepted the funds' high-risk investment strategy and acknowledged their ability to bear a loss of their entire investment." Compl. ¶ 9. During the financial crisis of 2008, the plaintiffs were "battered" and still have not fully recovered. *Id.* ¶ 10. After the crisis, the SEC's Enforcement Division investigated and ultimately charged the plaintiffs with violating the Securities Act of 1933 ("the Securities Act"), the Securities Exchange Act of 1934 ("the Exchange Act"), and the Investment Adviser's Act of 1940 ("the Adviser's Act"). *Id.*

The SEC issued an "Order Instituting Administrative and Cease-and-Desist Proceedings," or OIP, on March 22, 2013 against the plaintiffs and two other respondents, John Thomas Financial, Inc. ("JTF") and Anastasios "Tommy" Belesis ("Belesis"), who are not parties to this action. *See* Pls.' TRO Mot. Ex. A at 1, ECF No. 3-1. The OIP alleges that the four respondents engaged in fraudulent conduct and "elevated the interests of Respondents JTF and Belesis over those of the [Investor] Funds by steering millions of dollars in bloated fees to the broker-dealer." *Id.* at 2.

Using its power under 15 U.S.C. § 77h-1 and 15 U.S.C. § 78u-3, the SEC chose to bring an administrative action against the plaintiffs and their co-respondents instead of an injunctive action in a District Court, as provided for in 15 U.S.C. § 78u(d)(1). *See* Pls.' TRO Mot. Ex. A at 17; Def.'s Opp'n Pls.' TRO Mot. ("Def.'s TRO Opp'n") at 3. As the plaintiffs point out, this statute allows "[t]he SEC . . . discretion to bring certain cases in an [Administrative Proceeding], which previously could only be brought in federal court." Compl. ¶ 25; *see also* 15 U.S.C. § 78u-3(a) ("If the Commission finds, after notice and opportunity for hearing, that any person is

violating [securities laws] . . . the Commission may publish its findings and enter an order requiring such person . . . to cease and desist from committing or causing such violation . . . ."). Such administrative proceedings are governed by the SEC's "Rules of Practice," codified at 17 C.F.R. §§ 201.100 *et seq.*, which provide for, *inter alia*, procedures for summary disposition, *id.* § 201.250; interlocutory review by the SEC's Commissioners, *id.* § 201.400; and, of particular relevance to the instant matter, settlement before an administrative hearing has been conducted, *id.* § 201.240. The settlement portion of the Rules of Practice provides that "[a]ny person who is notified that a proceeding may or will be instituted against him or her, or any party to a proceeding already instituted, may, at any time, propose in writing an offer of settlement." *Id.* § 201.240(a).

In October 2013, the plaintiffs' two co-respondents exercised the option provided by § 201.240(a) by making an offer of settlement that contained "a consent to a finding that they 'aided, abetted and caused the Manager's and Adviser's breaches of their fiduciary duties to the Funds.'" Def.'s TRO Opp'n at 7; *see* Pls.' TRO Mot. Ex. Q (Order Making Findings, Imposing Remedial Sanctions and a Cease-and-Desist Order) ("the Order") at 2, ECF No. 3-3. Neither plaintiff in the instant matter is referred to by name in the settlement offer, but Plaintiff Jarkesy admits to being the "Manager" and "Adviser" referred to therein. *See* TRO Hrg. Tr. ("Tr.") 6:20-22, Jan. 31, 2014. The SEC accepted the offer of settlement in an Order dated December 5, 2013. *See* Pls.' TRO Mot. Ex. O ("Petition for Interlocutory Review and Stay of Proceedings") at 1, ECF No. 3-3.

The plaintiffs allege that in accepting the settlement offer and issuing the subsequent Order, the SEC "entered detailed and unqualified findings of fact and conclusions of law *against Plaintiffs*, including finding that Plaintiffs engaged in fraudulent conduct and violated a specific

3

provision of the Advisers Act." Compl. ¶ 19 (emphasis in original). The plaintiffs further allege that the Order "contains elaborate findings so sweeping as to establish violations of all of the [SEC's Enforcement] Division's charges and to support each of the remedies sought." *Id.* The plaintiffs assert that making such findings in the Order was "totally unnecessary to effect the settlement with [the plaintiffs' co-respondents] Belesis and JTF and, therefore, serve[d] no other purpose than to express the opinions and conclusions of the Commission." *Id.* ¶ 20.

Following the entry of the Order and before the commencement of the administrative hearing against the plaintiffs, the plaintiffs filed a Petition for Interlocutory Review and Stay of Proceeding, seeking to disqualify the SEC's Commissioners from hearing any proceedings related to the matter and a dismissal of the administrative proceeding. Pls.' TRO Mot. Ex. O at 1. In their petition, the plaintiffs allege that the Order "establishes that the Commission has conclusively prejudged the case against the [plaintiffs], and engaged in impermissible *ex parte* communications with the [Enforcement] Division staff in connection with the settlement." *Id.* at 1–2. The administrative law judge ("ALJ") assigned to the matter denied the plaintiffs' motion and the SEC Commissioners subsequently denied the plaintiffs' interlocutory appeal. *See* Pls.' TRO Mot. Ex. N ("Order Denying Certification for Interlocutory Review") at 1–2, ECF No. 3-3.

The plaintiffs filed suit in this Court on January 29, 2014, seeking a temporary restraining order to stay the administrative hearing scheduled for February 3, 2014, and a declaratory judgment that, *inter alia*, the SEC violated the plaintiffs' right to due process and violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* Compl. ¶¶ 66–72. The Court held a hearing on the plaintiffs' Motion for a Temporary Restraining Order, filed contemporaneously with their Complaint, on January 31, 2014. *See generally* Tr. Following the TRO hearing, the Court denied the plaintiffs' motion for a Temporary Restraining Order. *See* Tr. 73:1-4.

Specifically, the Court found that the plaintiffs failed to sustain their burden in seeking injunctive relief because (1) the Court was "not convinced that [it has] jurisdiction over this matter or that this case is ripe for decision[;]" (2) the plaintiffs had failed to show they did not have adequate remedies at law, as provided for by the various securities laws they are accused of violating; (3) the plaintiffs failed to show that they would be irreparably harmed by submitting to an ALJ proceeding; and (4) the balance of equities did not favor the plaintiffs. *See* Tr. 73:5–74:18. The parties were ordered to submit a proposed briefing schedule to address the pending motion for preliminary injunction. *See* Minute Order, Jan. 31, 2014.

Rather than continue briefing on the preliminary injunction motion, the parties proposed "that the Court first issue a ruling on subject matter jurisdiction" since, if "the Court finds it does not have subject matter jurisdiction over Plaintiffs' claims, no further briefing by either party would be necessary." Prop. Br. Sched. at 2, ECF No. 11. The parties were subsequently ordered to show cause why the plaintiffs' motion for a preliminary injunction was not moot, since the administrative proceeding the plaintiffs sought to delay had proceeded as scheduled. *See* Minute Order to Show Cause, Feb. 18, 2014. In connection with filing their response, the plaintiffs sought leave to amend their complaint to "add more facts supporting their claims against Defendant," in essence to show that the plaintiffs' request for a preliminary injunction was not moot. *See* Pls.' Mot. Am. Compl. at 1, ECF No. 16; Prop. First Am. Compl. ¶ 1, ECF No. 16-2 (noting plaintiffs sought to "prevent the SEC from proceeding with . . . all other phases of the [Administrative Proceeding], that has violated, and will continue to violate, Plaintiffs' fundamental constitutional rights."). The Court now addresses the threshold issue of whether it has subject matter jurisdiction over the plaintiffs' claims.

5

## II. LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

It is the plaintiffs' burden to establish a court's jurisdiction over the subject matter by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The Court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The Court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject matter jurisdiction, the Court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert*, 974 F.2d at 197; *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

## III. DISCUSSION

The statutory and regulatory regime under which the SEC's Enforcement Division brought the instant matter against the plaintiffs precludes this Court from exercising subject matter jurisdiction to hear the plaintiffs' claims. The Exchange Act, which the plaintiffs are accused of violating, provides that "[a] person aggrieved by a final order of the [SEC] . . . may obtain review of the order in the United States Court of Appeals." 15 U.S.C. § 78y(a)(1). This statute presents two insurmountable obstacles for the plaintiffs' case in this Court: first, no final order has yet been entered by the SEC, which raises substantial questions about the ripeness of this action for review; and, second, even were this action ripe, federal court review must take place in one of the courts of appeals.

With respect to the first issue, the plaintiffs' counsel implicitly admitted at oral argument that the SEC has issued no final order binding on the plaintiffs, referring to the Order—against their co-respondents—as separate and distinct from "the next [order] that would be coming up, [which] one will have a completely preclusive effect and will trigger a cascade of lawsuits" against the plaintiffs. *See* Tr. 50:19-23. In admitting that no final ALJ decision has been entered against them, let alone a finding by the SEC's Commissioners, the plaintiffs appear to concede that they are not yet persons "aggrieved by a final order of the [SEC]." 15 U.S.C. § 78y(a)(1). In any event, since no District Court would have subject matter jurisdiction over this matter even if it were ripe for decision, *see* 15 U.S.C. § 78y(a)(1), the Court need not address this issue any further.

Two Supreme Court cases, *Thunder Basin Coal Co. v. Reich* (*Thunder Basin*), 510 U.S. 200 (1994), and *Free Enterprise Fund v. Public Co. Accounting Oversight Board.* (*Free Enterprise*), 130 S. Ct. 3138 (2010), are dispositive as to why no District Court may hear the

7

plaintiffs' suit. In *Thunder Basin*, the Supreme Court examined a statutory review mechanism similar to the one at issue in the instant case. *See* 510 U.S. at 205. Specifically, the Court reviewed the Federal Mine Safety and Health Amendments Act of 1977, which provides that "[c]hallenges to enforcement are reviewed by the Federal Mine Safety and Health Review Commission . . . and by the appropriate United States Court of Appeals." *Id.* at 204. In *Thunder Basin*, "[t]he Act establishe[d] a detailed structure for reviewing violations," consisting of a proceeding initiated by the agency before an ALJ, who adjudicates any challenges to such action, an appeal to the agency, and then review before the Court of Appeals. *See id.* at 207–08. In the instant matter, a virtually identical four-step process is mandated, where (1) charges are brought by the SEC's Enforcement Division before an ALJ; (2) the plaintiffs have the opportunity to be heard and present evidence challenging the charges; (3) the plaintiffs may appeal an adverse ALJ decision to the SEC Commissioners; and (4) if the plaintiffs are aggrieved by the resulting final order, the plaintiffs may appeal to a federal Court of Appeals. *See* 15 U.S.C. §§ 78u-3, 78y(a)(1).

Where Congress has established such a comprehensive scheme for review of agency enforcement proceedings, the Supreme Court in *Thunder Basin* held that litigants may nevertheless bring claims to the District Court if the "claims considered [are] wholly collateral to a statute's review provisions and outside the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review." 510 U.S. at 212–13 (internal quotation marks and citations omitted). The *Thunder Basin* Court went on to find that the exception did not apply to the plaintiff in that matter, despite the plaintiff raising a constitutional due process claim—as the plaintiffs are raising here. *See id.* at 215–16. The *Thunder Basin*

Court concluded that any "statutory and constitutional claims . . . can be meaningfully addressed in the Court of Appeals" following agency review. *Id.* at 215.

Similarly to the plaintiff in *Thunder Basin*, the plaintiffs in the instant matter have failed to establish that the exception outlined by the Supreme Court in that case applies. Although the plaintiffs raise various allegations of violations of their constitutional rights to due process and equal protection, *see generally* Compl., those claims are inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter. *See* 15 U.S.C. § 78y(a)(1). While the constitutional questions may be outside the purview of the agency's expertise, there is no dispute that the plaintiffs will have the opportunity to raise all of their constitutional claims before a Court of Appeals should the ALJ and the Commission issue orders adverse to them. *See id*.

The Supreme Court's decision in *Free Enterprise* does not counsel a different result and, indeed, illustrates why the plaintiffs' claims are not heard appropriately by any District Court. In *Free Enterprise*, the Supreme Court found that the petitioners were not challenging the application of a particular rule to them, but rather they were challenging makeup of the federal agency in question and whether the agency's very existence was constitutional, making their challenge wholly collateral to the statutory scheme that would otherwise strip the District Court of jurisdiction. *See* 130 S. Ct. at 3150. Moreover, the Supreme Court noted that, in *Free Enterprise*, the petitioners were faced with the prospect of having knowingly to violate the rules they were challenging, which would entail the risk of a substantial fine, in order to initiate a proceeding that could eventually lead to judicial review. *See id.* at 3151 ("We normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law'" (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007))). Thus, an

9

animating concern in *Free Enterprise* was the fact that the petitioners would have to commit a violation they otherwise would not have committed merely to trigger the opportunity to review the constitutionality of the challenged agency's existence. *See id.*

Here, the plaintiffs do not raise a "wholly collateral" challenge, nor are they being forced to "bet the farm" on an action they would not otherwise take. *See id.* at 3150–51. The plaintiffs are challenging the SEC's interpretation of its own regulations—pertaining to *ex parte* communications and settlement authority—and the SEC's interpretation of various securities laws as they pertain to the plaintiffs. *See generally* Compl. Far from challenging something wholly collateral to their own situation, the plaintiffs' claims here are entirely related to their own actions, just as were the petitioner's claims in *Thunder Basin*. *See* 510 U.S. at 214. Additionally, unlike the petitioners in *Free Enterprise*, who had seen the investigation into their accounting practices conclude without a recommendation for a sanction, yielding no opportunity for judicial review, *see Free Enterprise*, 130 S. Ct. at 3150 ("an uncomplimentary inspection report is not subject to judicial review"), the plaintiffs in the instant matter will either have the opportunity to seek judicial review if they are aggrieved by the SEC's final order or, if they are not aggrieved, their fact-specific challenges will be moot. In either situation, the plaintiffs in the instant matter have a "'meaningful' avenue of relief," *id.* at 3151, similarly to the petitioners in *Thunder Basin* and unlike the petitioners in *Free Enterprise.* [1]

The D.C. Circuit and other decisions from this Court have applied *Thunder Basin* to find subject matter jurisdiction lacking before the District Court. In *Sturm, Ruger & Co. v. Chao*, 300

---

[1] The Supreme Court has reaffirmed the reasoning in *Thunder Basin* at least twice since that case was decided. For example, in *Elgin v. U.S. Department of the Treasury*, 132 S. Ct. 2126, 2132 (2012), the Court noted that when "the plaintiff's claims could be 'meaningfully addressed in the Court of Appeals,'" and "Congress' intent to preclude district court jurisdiction was "'fairly discernible in the statutory scheme[,]'" the Constitution allowed an agency to be the first to hear an as-applied challenge to an agency decision. Likewise, in *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 19 (2000), the Court explained that the "strong presumption against preclusion of review is not implicated by [a] provision postponing review," again finding that Congress has the power to "channel" the first review of agency decisions away from District Courts.

10

F.3d 867, 874–75 (D.C. Cir. 2002), for example, the D.C. Circuit found that a plaintiff's claim was not "wholly collateral" to a statutory agency review provision when evaluating the merits of the plaintiff's claims "requires interpretation of the parties' rights and duties" under the operable statute. At issue in that case was a provision in the Occupational Safety and Health Act providing to the Department of Labor powers similar to those provided to the SEC under the Securities Act. *Id.* at 868. The D.C. Circuit concluded that "barring district court review . . . [would] not deprive employers of the opportunity to obtain judicial review" because any employer aggrieved by the Labor Department's actions could "contest the citation through the statutory review procedure that ultimately ends in a court of appeals." *Id.* at 874.

Alternatively, when a plaintiff is making a facial challenge to a statute, a situation that is not present in this case, the general *Thunder Basin* rule does not apply. *See Gen. Elec. v. EPA*, 360 F.3d 188, 191 (D.C. Cir. 2004). The *General Electric* court noted that when a statute barred District Court review of particular agency actions, such a provision did not divest the District Court of subject matter jurisdiction over the "statute itself." *Id.* While the plaintiff in *General Electric* was challenging the constitutionality of a statute, the plaintiffs here have made no such claim about any statute apart from how the statute is being applied to them in the instant enforcement action. *See id.* Thus, the plaintiffs' claims fall squarely within the controlling authority of *Thunder Basin* instead of *General Electric* and, consequently, this Court is without jurisdiction to hear their claims.

Courts interpreting *Free Enterprise* have similarly found that where a statute provides an agency the first opportunity to review a claim before appeal to a Court of Appeals, the statute deprives the District Court of jurisdiction. *See Amerijet Int'l v. U.S. Dep't of Homeland Sec.*, No.13-1405, 2014 U.S. Dist. LEXIS 70270, at *40–41 (D.D.C. May 22, 2014) (finding, under

11

*Free Enterprise* standard, that review in Court of Appeals after review of action within agency deprived District Court of subject matter jurisdiction); *see also Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, No. 13-1112, 2013 U.S. Dist. LEXIS 149387, at *33–35 (D.D.C. Oct. 17, 2013) (denying request for injunctive relief and dismissing matter where District Court had no subject matter jurisdiction over enforcement proceeding involving constitutional issues where plaintiff had right to appeal in Court of Appeals).[2]

In sum, the statutory regime embodied in the Securities Act sets forth an exclusive mechanism for the plaintiffs to pursue their claims: first, before an ALJ, then before the SEC's Commissioners, and finally, if necessary, before a Court of Appeals. To the extent that the plaintiffs believe their cause has been prejudged by the SEC's Commissioners, they may seek review, if necessary, before the Court of Appeals, but the statute leaves no room for this Court to provide them the relief they seek.

---

[2] At the TRO Hearing, and in their memoranda in support of their request for that injunctive relief, the plaintiffs relied heavily on a Southern District of New York case, *Gupta v. SEC*, 796 F. Supp. 2d. 503, 514 (S.D.N.Y. 2011), in which the district court allowed an equal protection claim against the SEC to proceed in the context of a challenge to an administrative proceeding, despite dismissing the plaintiff's remaining claims. *See* Tr. 34:6–38:24 (discussing *Gupta* and equal protection claim); Pls.' Mem. Supp. TRO Mot. at 14, 16, 18, 34–35, ECF No. 3-1 (same). Notably, the plaintiff's do not mention this case in its memoranda submitted after the TRO Hearing. *See generally*, Proposed Briefing Schedule, ECF No. 11; Pls.' Resp. Ct.'s Show Cause Order, ECF No. 12; Pls.' Reply Def.'s Resp. Order Show Cause, ECF. No. 15. As the Court indicated at the TRO hearing, the plaintiffs' reliance on *Gupta* is questionable in the wake of *Altman v. SEC*, 687 F.3d 44, 45 (2d Cir. 2012), which applied *Thunder Basin* in affirming a District Court's decision that it did not have subject matter jurisdiction over a constitutional challenge to an ongoing SEC administrative proceeding. In any event, the Court finds the controlling precedent in this Circuit to support only one outcome in this case: namely, dismissal.

**IV. CONCLUSION**

The plaintiffs' Complaint must be dismissed because this Court lacks subject matter jurisdiction over their claims. *See* FED. R. CIV. P. 12(h)(3). Moreover, because the proposed amended complaint does not add any facts to correct the fatal jurisdictional problems with the plaintiffs' claims, the plaintiffs' Motion to Amend is denied as futile.

An appropriate Order accompanies this Memorandum Opinion.

Date: June 10, 2014

_____
BERYL A. HOWELL
United States District Judge